UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY P. ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ARCATA, et al.,<br><br>Defendants. | Case No. 14-cv-04625-JD<br><br>**ORDER DISMISSING CASE** |

Plaintiff Gregory P. Allen has sued the City of Arcata and two of its public officials (together "Arcata") under 42 U.S.C. § 1983 for allegedly violating his First Amendment rights. The gist of the complaint is that Arcata put up impediments to the observance of "420" day, the celebration of "cannabis culture" observed by some on April 20th, in the city's Redwood Park. Complaint, Dkt. No. 1 at ¶ 7. The complaint fails to allege any concrete injury to plaintiff sufficient to confer Article III standing, and the facts in the complaint show that plaintiff cannot amend to establish standing. Consequently, the case is dismissed with prejudice.

## BACKGROUND

Plaintiff Allen is an attorney and "cannabis activist." Dkt. No. 1 at ¶ 8. According to the complaint, the City of Arcata is "saturated by cannabis growing and cannabis culture." *Id*. at ¶ 9. Supporters of that culture enjoyed 420 gatherings in Redwood Park "to celebrate, advocate for legalization, and consume cannabis." *Id*. at ¶ 7. From 1998 to 2009, Allen attended 420 events in the park "between six and ten times" with "thousands of people" devoted to cannabis. *Id*. at ¶ 8. But Arcata took a dim view of the 420 event, and "concocted a five-year plan" to harsh the mellow of the gathering and end it. *Id*. at ¶ 10. "This plan was put into effect on April 20, 2010" and continued through April 2014. *Id*.

The tactics Arcata allegedly used to blunt the 420 event in 2010 were mild. On April 20, 2010, the first year the accused plan was implemented, Arcata posted police officers at the two entrances to Redwood Park "and informed people who walked into the park that there was to be no 420 celebration in the park." *Id*. at ¶ 11. People who came to celebrate 420 "were diverted into the adjacent community forest." *Id*. The police undertook "increased surveillance and enforcement" of the celebrants shunted into the forest by "writing tickets for smoking and unlicensed dogs." *Id*. Allen does not allege that he was ticketed or subjected to any police enforcement action in any way. But "he saw police questioning people about whether their dogs were licensed" and was "appalled" at the "increased scrutiny and enforcement." *Id*. at ¶ 12. Allen states that he was "unable to enter the main grassy area of the park" due to the police. *Id*. This "deterred" Allen from returning to Redwood Park for 420 events ever again. *Id*.

Although Allen was personally out of the picture after 2010, the complaint alleges that Arcata in subsequent years pursued more exotic methods to discourage 420 gatherings. These tactics included scheduling tree-limb removal in the park on one April 20th, soaking it with fish emulsion fertilizer on another, and posting signs saying "all marijuana laws strictly enforced" and "no 420 celebration." *Id*. at ¶ 13.

The alleged effect of these measures was to "abridge[], chill[] and violate[] the rights of plaintiff and other 420 celebrants to free speech, to peaceably assemble, and to petition for redress of grievances." *Id*. The complaint alleges a single 42 U.S.C. § 1983 claim on those First Amendment grounds. *Id.* ¶ 19.

**DISCUSSION**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* at 556). In deciding whether the plaintiff has stated a claim, the Court must

assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The Court is not required, however, to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citation omitted).

As an initial and dispositive matter, the complaint fails because Allen has not alleged facts sufficient to establish standing to sue under Article III of the United States Constitution. As the Supreme Court has held, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013) (citation omitted). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id.* While it is certainly true, as the Ninth Circuit has held, that some constitutional challenges based on the First Amendment may be subject to a relaxed standing analysis, "plaintiffs must still show an actual or imminent injury to a legally protected interest." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). This requirement applies "even when plaintiffs bring an overbreadth challenge" to a speech restriction that "may unconstitutionally chill the First Amendment rights of parties not before the court." *Id*. The plaintiff there "must still satisfy 'the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction.'" *Id.* (internal citation omitted).

This Allen has failed to do. Nothing in the complaint alleges any facts showing an actual or threatened First Amendment injury to Allen, or injury of any kind. In relation to the 420 events stated in the complaint, he does not challenge a statute, law or ordinance as unconstitutionally restrictive or overbroad. He was not arrested, cited or ticketed. He was not denied a permit or license. He was not threatened with prosecution or any adverse state action of any kind. He was

3

not singled out for any police monitoring or harassment.  At most, the complaint alleges that Allen felt inhibited and "appalled" by what he saw at Redwood Park in April 2010, but that kind of subjective chill is not enough to establish injury for a justiciable case.  *Lopez*, 630 F.3d at 787, 792.  And because Allen experienced no injury himself, he cannot sue on behalf of others who might have experienced similar events.  *Id*. at 792.  ("Plaintiffs who have suffered no injury themselves cannot invoke federal jurisdiction by pointing to an injury incurred only by third parties.").

The single occasion in April 2010 when Allen alleges he was prevented from entering the "main grassy area of the park" does nothing to save his case.  Allen cites no case law showing that a partial closing of a park to all potential 420 celebrants amounts to a particularized First Amendment injury in fact to him.  But even assuming that Allen could state injury in fact from that event, he has waited too long to bring a Section 1983 claim on it.  The California statute of limitations of two years for a personal injury action applies to the Section 1983 claim.  *Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004).  To be timely on the April 2010 event, Allen should have filed his complaint in 2012.  He did not bring this suit until October 2014.

Allen makes a vague and unpersuasive effort to invoke a "continuing violations" theory to excuse his untimeliness.  Allen appears to argue that he can sue on the April 2010 event because Arcata engaged in an ongoing conspiracy whose last over act was in April 2014, just a few months before he filed this lawsuit.  The Ninth Circuit has rejected this tactic:

> [I]njury and damage in a civil conspiracy action flow from the overt acts, not from the mere continuance of a conspiracy. Consequently, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff, and separate conspiracies may not be characterized as a single grand conspiracy for procedural advantage.

*Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) (internal quotations and citations omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (discrete discriminatory acts not actionable when time-barred even if they relate to timely claims); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002) (applying *Morgan* to bar § 1983 claims predicated on discrete time-barred acts when those acts were related to timely-filed

claims). This leaves Allen holding an empty bag, because the last overt act with which he had any personal involvement -- and any possibility of claiming injury in fact -- was in April 2010, and he did not sue until October 2014.

## CONCLUSION

Allen lacks standing to sue on his own behalf or on behalf of any third party. The final issue for the Court to decide is whether to permit him to try to amend. Our circuit has held that leave to amend a defective complaint should be granted liberally, and this Court normally does that in the cases before it. Here, however, the facts alleged in the complaint show definitively that Allen does not have any injury sufficient for standing and cannot allege new facts to show that he does. Consequently, the case is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 13, 2015

_____
JAMES DONATO
United States District Judge